[Civ. No. 19293. First Dist., Div. Two. Feb. 20, 1961.]

Adoption of ALBERT JOHN THEVENIN, JR., et al., Minors. FRANKIE SHIELDS, Appellant, v. PHYLLIS THEVENIN, Respondent.

Harold R. Hayes for Appellant.

Raymond H. Goodrich and Joseph C. Davish for Respondent.

KAUFMAN, P. J.—This is an appeal from an order approving a stepparent adoption. Phyllis Thevenin filed a petition to adopt her husband's four minor children by his former marriage to the appellant, Frankie Shields. The petition alleges that Phyllis and Albert J. Thevenin, the father of the children, were married on June 1, 1957, and that since that time, the children had been in their custody and care; that formerly, Albert was married to the appellant and obtained a final decree of divorce from her on April 5, 1957; that by this decree, the custody of the children was awarded to their father, the appellant having reasonable rights of visitation; that for more than three years, the appellant had not visited or communicated with the children, and that her consent to the proposed adoption was rendered unnecessary by section 224 of the Civil Code.

The children's father signed and filed a written consent to the adoption by Phyllis, on the form and in the manner prescribed by section 226 of the Civil Code. The appellant was served with a citation duly issued, pursuant to the provisions of section 224 of the Civil Code. The appellant filed no objections to the petition, but appeared at the hearing, and expressly voiced her lack of consent. The court found that the allegations in the petition were true, that the best interest of the children would be promoted by the adoption, and entered its judgment accordingly. On appeal, it is argued that the court was without jurisdiction to grant the petition for adoption without the consent of the appellant; that the findings are not supported by the evidence; and that the court erred in considering the ex parte report of the probation officer. There is no merit in any of these contentions.

The first argument is that the court was without jurisdiction to grant the respondent's petition without the consent of the appellant because section 224 of the Civil Code cannot be applied retroactively. Appellant asserts that the

portion of the statute which eliminates the consent of the natural mother did not become effective until September 18, 1959, while the petition here was filed on August 28, 1959. We are at a loss to find any basis for this argument. The relevant portion of section 224 of the Civil Code, reads as follows:

"A legitimate child cannot be adopted without the consent of its parents if living; however, after the custody of any child has, by any judicial decree, *been given to the father, and the mother for a period of one year fails to communicate with such child when able to do so, or* been given to the mother, and the father for a period of one year shall wilfully fail to pay for the care, support and education of such child when able to do so, then the *parent to whom custody has been given* alone may consent to such adoption, but only after the *parent to whom custody has not been given* has been personally served with a copy of a citation requiring him or *her* to appear at the time and place set for the appearance in court under Section 227 of this code . . ." [Emphasis supplied.]

The italicized portions of the above were enacted in 1955, and became effective on September 7 of that year. (Stats. 1955, ch. 758, p. 1252, § 1.) Section 224 of the Civil Code has not been amended since that time.

Appellant further contends that the only situations where the consent of *both* parents is not required are listed in subsections 1, 2 and 3 of section 224, and further argues that the facts here do not constitute desertion without provision for identification (subsec. 2). We agree that subsection 2 of section 224 is not involved, nor are the other special situations outlined by subsections 1 and 3. This case clearly and expressly falls under the above quoted language of the first paragraph of section 224.

"Where the meaning of the statute is plain there is no room or justification for judicial interpretation, and the only function of the court is the application of the enactment to the facts at bar. . . ." (*Riley* v. *Robbins,* 1 Cal.2d 285, 287-288 [34 P.2d 715].) The interpretation of a statute as a whole must be reasonable and when opportunity arises, made compatible with common sense and the dictates of justice. It is the duty of courts not to be ingenious to find ambiguity in the statutes because of extraneous matters, but to interpret them in such a manner that they may be free of ambiguity, and to give, if possible, a construction which not only renders them constitutional, but which is consistent with sound common sense and wise policy, with a view to promoting

justice. (*Estate of Todd,* 17 Cal.2d 270, 275 [109 P.2d 913].)

 It is our opinion that the plain intent of the applicable portion of the first paragraph of said section 224 is to provide that a legitimate child may not be adopted without consent of both parents, unless custody of such child has been given to the father by judicial decree, and during the time the child is in the custody of the father, the mother for a period of one year fails to communicate with such child when able to do so, in which event the child may be adopted with the consent of the father alone, but only after the mother is served with a citation requiring her to appear at the adoption hearing. Thus, the statute in substance, recognizes a mother's right to effectively object to the adoption of her children, by requiring that she give her consent to such adoption, and provides that she may lose that right upon the happening of events which are tantamount to abandonment. However, abandonment is not an issue in proceedings under section 224. (*Adoption of McLaughlin,* 155 Cal.App.2d 22 [317 P.2d 61].)

 At any time after the conditions of section 224 with respect to neglect by the mother, have been fulfilled, a child may be adopted with the consent of the father alone, unless the court in discharge of its obligations to approve the adoption only if it is for the best interests of the child should determine otherwise (*In re Sharon,* 179 Cal. 447, 454 [177 P. 283] ; *In re Johnson,* 98 Cal. 531, 536 [33 P. 460, 21 L.R.A. 380]). The notice of hearing required by the statute affords the mother an opportunity to contest the contention that her children may be adopted with the consent of the father alone, and also to show that the adoption would not be for their best interests. The court is authorized to deny the petition if the best interests of the child would be served by maintaining the existing relation with a natural parent, in the event custody had been restored to the mother or she had resumed acceptance of her responsibilities.

 This interpretation is in accord with the spirit of our law, which although "solicitous toward maintaining the integrity of the natural relation of parent and child" (*Matter of Cozza,* 163 Cal. 514, 524 [126 P. 161]) recognizes that this relation may be terminated by conduct of the mother regarded as unnatural and destructive. The rule of strict construction of our adoption statutes in favor of the natural parents has recently been disapproved. (*Adoption of Barnett,* 54 Cal.2d 370, 378 [6 Cal.Rptr. 562, 354 P.2d 18].) The obvious purpose of the statute is to provide the child with a real

mother, instead of one who, by her past conduct, is proven to be a mother in name only, even though related by blood. This purpose would be defeated if a mother who had failed to communicate with her child, while able to do so, during the long period of time described in the statute, could prevent the child's adoption with the consent of the father alone by obtaining a change in the custody order or making some attempt at communication after the filing of the petition for adoption.

A statute should not be interpreted in favor of a mother who seeks the benefit of parental rights but shuns the burden of parental obligations. Although the precise language here involved has not been previously construed, our view here is based on the construction of the parallel provision of the first paragraph which gives a correlative right to the mother who has been given custody by judicial decree and the father for a period of one year wilfully fails to pay for the care, support and education of the child, when able to do so. (*Adoption of Burton,* 147 Cal.App.2d 125 [305 P.2d 185].) That case also disposes of appellant's arguments based on the *Matter of Cozza, supra,* and holds that the one-year period of neglect by a father must occur *after* custody of the children has been awarded to the mother. (*Adoption of Burton, supra,* pp. 132-133.) Similarly, in a case like this one, the period of no communication from the mother must occur after custody of the children has been awarded to the father. This directly bears on the appellant's next argument, which is that the findings of the court on this matter are not supported by the evidence.

However, a proceeding for an adoption is a special proceeding (Code Civ. Proc., § 23; *Adoption of Pitcher,* 103 Cal.App.2d 859, 864 [230 P.2d 449]), created by statute, in which written findings are not required. (*In re Peterson,* 56 Cal.App.2d 791 [133 P.2d 831].) Thus, the question is not one of sufficiency of the evidence, but only whether the court abused its discretion in granting the petition. (*Guardianship of Peterson,* 64 Cal.App.2d 473, 478 [149 P.2d 65].)

In this kind of proceeding, a wide discretion is reposed in the trial judge and his decision should not be disturbed by a reviewing court in the absence of a clear showing of an abuse of such discretion. (*Adoption of Kelly,* 47 Cal.App.2d 577 [118 P.2d 479]; *In re Hickson,* 40 Cal.App.2d 89, 93 [104 P.2d 411].)

The record indicates that the appellant when called as a witness by the respondent under section 2055 of the

Code of Civil Procedure testified that the last time she saw her children before the hearing was around January 25, 1956; the hearing was held on November 10, 1959. She stated that she had made no effort to communicate with her children during the entire period of time. She further testified that she knew the children's address in Santa Cruz; that she lived in Mountain View until November, 1956, at which time she moved to Yuba City with her new husband, Mr. Shields.

When asked by her attorney why she had not invited the children, the appellant said: "Well, I'm afraid I didn't visit much of anybody. I couldn't drive that far in one day because it was just too much. I was afraid to for fear of losing the child when I was carrying it. I was unable to do it after the child was born, and I just haven't been able to get down this far." The child referred to was Kristen Shields who was born on June 29, 1956. She also testified that she never sent the Thevenin children a birthday or Christmas card, as she "didn't think they would get them." She further stated that she did want to see her children, not visit them, because it caused an uproar with the children, but that neither the respondent nor the father of the children prevented her from seeing them. After hearing the appellant's explanation of her conduct, the question of whether she failed to communicate with her children when able to do so was one of fact for the trial court.

In light of all of the above, we can only conclude that the appellant has not met her burden of showing an abuse of discretion.

The final argument is that the trial court erroneously considered the report of the probation officer with no presentation therein of the appellant's position. There is no merit in this contention. Appellant's argument is based on the erroneous assumption that an adoption proceeding is a contest between the petitioner and the nonconsenting parent rather than a proceeding quasi in rem which creates a status (*Walter* v. *August,* 186 Cal.App.2d 395, 398 [8 Cal.Rptr. 778]), and in which the only criterion is the best interest of the child. (Civ. Code, § 227; *In re Santos,* 185 Cal. 127 [195 P. 1055].)

"The matter of adoption rests in the sound discretion of the court and in the exercise of that discretion information from all proper sources should be sought by the one who must determine the matters so momentous to the

infant—the future home and the influences which shall surround the minority of the child. No higher discretion than this is vested in a court. After all of the formalities prescribed by the statutes have been complied with, the court must make the order that the child shall thenceforth be treated as the child of the adopting petitioners only 'if satisfied that the interests of the child will be promoted by the adoption.' (Civ. Code, § 227.)'' (*Matter of Bewley,* 167 Cal. 8, 10 [138 P. 689].)

The probation report is required by section 227a of the Civil Code, which provides: ''The probation officer in the county in which the action for adoption is pending shall make an investigation of each case of adoption by a stepparent where one natural parent retains custody and control of the child. No order of adoption shall be made by the court until after such probation officer shall have filed his report and recommendation and the same shall have been considered by the court.''

Appellant appears to argue that the report prejudiced her position as it stated that the investigation showed the respondent to be a suitable person and the home satisfactory; that the respondent had cared for the children from December 1955, until her marriage to their father, and recommended the adoption. However, the statute sets no precise standards for the report. The report usually covers the legal aspects of the child's status, the verification of marriages, the apparent stability and financial outlook of the marriage, the relationship between the child and the petitioner. (See California Practice Handbook ''Family Law for California Lawyers,'' Continuing Education of the Bar, 1956, p. 719.)

In the instant case, the court not only considered the probation officer's report as was its duty pursuant to section 227a, but also examined the appellant; the father of the children; the respondent; and the children. The appellant was present throughout the entire proceeding and had ample opportunity to present her position to the court; and at the end of the proceeding, she was given an opportunity to make an additional statement to the court. We think the trial court thus sought information from all proper sources and exercised its discretion in a manner commensurate with its high duty.

No prejudicial error appearing, the order is hereby affirmed.

Draper, J., and Shoemaker, J., concurred.