[Civ. No. 39932. Second Dist., Div. Five. Mar. 21, 1973.]

In re HELEN J. et al., Minors.
COUNTY OF LOS ANGELES DEPARTMENT OF ADOPTIONS, Petitioner and Respondent, v.
LINDA J. et al., Objectors and Appellants.

## COUNSEL

Richard Morris for Objectors and Appellants.

John D. Maharg, County Counsel, and Raymond G. Fortner, Jr., Deputy County Counsel, for Petitioner and Respondent.

## OPINION

**KAUS, P. J.** — Linda J. and Anton J. ("citees") are the natural parents of the five minors involved in this proceeding under section 232, subdivision (b) of the Civil Code.[1] The children, born between April

---

[1] Unless otherwise indicated all statutory references are to the Civil Code.

Section 232, subdivision (b) provides: "An action may be brought for the purpose of having any person under the age of 21 years declared free from the custody and control of either or both of his parents when such person comes within any of the following descriptions: . . . (b) Who has been cruelly treated or neglected by either or both of his parents, if such person has been a dependent child of the

1963, and July 1967, were taken from their home January 1968, by welfare authorities when they were found in bad physical condition and without adult supervision. They were adjudged dependent children on January 11, 1968. (Welf. & Inst. Code, § 600.) Medical examinations of the children disclosed that Anton III, about 3½ years old, had serious burns on his forearms. Josef and Jonathan, twins of about 2½ years, were suffering from intestinal problems associated with malnutrition.

The children were placed in foster homes. Their status as dependent children was renewed annually, the last time on January 4, 1971. On May 17, 1971, in order to allow for their permanent adoption, the County of Los Angeles Department of Adoptions ("county") petitioned under section 232.9 to have the children declared free from parental custody and control. On September 21, 1971, the court granted the petition. Findings of fact and conclusions of law were signed and filed September 22, 1971. The judgment was entered on October 5, 1971.

In this appeal from the judgment the citees raise several contentions.

## I.

■ Their first claim is that the court did not acquire jurisdiction because the citation had not been served on the "person having the custody or control" of the children or "the person with whom" the children were, as directed by section 234 of the Civil Code.

The record filed in this court does not expressly show, one way or another, whether there had been compliance with section 234. The fact is, however, that the court's minutes show that the first time this matter was on its calendar, on June 21, 1971, the minors were present, as were citees. The hearing was then continued to July 26, 1971. All "parties and witnesses" were ordered to return without further order, notice or subpoena.

Since the purpose of section 234 can only be to bring the children before the court and since they were before the court, the point has no merit.

For what it is worth, we note that starting with the July 26 hearing, citees were represented by highly competent private counsel. At no time did he make a point of the minors' absence from the proceedings.

juvenile court, and such parent or parents deprived of his custody for the period of one year prior to the filing of a petition praying that he be declared free from the custody and control of such cruel or neglectful parent or parents."

## II.

■ Citees claim that the court erred in not advising the minors of their rights under section 237.5. That section reads, in relevant part, as follows: "At the beginning of the proceeding on a petition filed pursuant to this chapter, the judge shall first read the petition to the child's parents, if they are present, and may explain to the child the effect of the granting of the petition and upon request of the minor upon whose behalf the petition has been brought or upon the request of either parent the judge shall explain any term or allegation contained therein and the nature of the proceedings, its procedures, and possible consequences. The judge shall ascertain whether the minor and his parent have been informed of the right of the minor to be represented by counsel, and if not, the judge shall advise the minor and the parents, if present, of the right to have counsel present. The court may appoint counsel to represent the minor whether or not the minor is able to afford counsel, and, if they are unable to afford counsel, shall appoint counsel to represent the parents." (Civ. Code, § 237.5.)

When the proceedings started on July 26 the following took place: "THE COURT: Gentlemen, are you ready to proceed in the J . . . Matter? [COUNTY COUNSEL]: Ready, Your Honor. [CITEES' COUNSEL]: Ready, Your Honor. [COUNTY COUNSEL]: Your Honor, at the outset I might inquire if the citees, Mr. and Mrs. J . . ., have been informed of their rights under Section 237.5 of the Civil Code, and if not, I request that they be. [CITEES' COUNSEL]: With reference to what particular—Yes, Your Honor, they have. THE COURT: All right, you may proceed. . . ."

Concededly this colloquy makes it impossible for citees to claim that they were not advised of their own rights under section 237.5. (Cf. *Adoption of R. R. R.*, 18 Cal.App.3d 973, 987 [96 Cal.Rptr. 308].) They do, however, claim that they have standing to complain about the court's alleged failure to advise the minors of their rights, particularly the right to be represented by counsel. We note that the claim of error is based solely on asserted noncompliance with section 237.5. No constitutional argument is put forward.

It is apparent that under the circumstances citees' argument is highly technical. The only apparently mandatory duty enjoined on the court by section 237.5, was to ascertain whether the minors had been informed of their right to counsel and, if not, to so advise them. Just how that failure is supposed to have harmed the children is not made clear. The statute does not compel the court to appoint counsel for the minors. The chance that any of the five children, whose maximum age was eight would have

retained private counsel seems miniscule. In any event, the record justifies answering appellants' technicality with another: Section 237.5 demands that its dictates and suggestions be complied with "at the beginning of the proceeding." That was June 21. Citees have not furnished us with a transcript for that date. We are therefore justified in relying on the presumption that official duty was regularly performed. (Evid. Code, § 664.)

### III.

 Citees claim that the court did not find that the conditions which gave rise to the minors being found dependent children in 1968, still persisted in 1971 (cf. *In re Morrow,* 9 Cal.App.3d 39, 56 [88 Cal.Rptr. 142]) and that it did not find that an award of custody to their parents—appellants—would be detrimental to them.[2]

They further complain that they were not given an opportunity to object to the findings, submit counter findings and to request special findings.

These contentions all assume that the judgment declaring the minors free from appellants' control must be supported by findings.

Procedurally what happened in this case is this: on July 26, 1971, nine witnesses testified. Then, with counsel's concurrence, the court ordered appellants and Anton III examined by "Doctor Ackley, the Court psychiatrist" and stated that it would decide the matter after receiving Doctor Ackley's report. Two days later, the minute order for July 26 was "amended nunc pro tunc" to change the appointment of Doctor Ackley to an appointment of "the first available psychiatrist on the list . . ." Both counsel were notified. The first available psychiatrist apparently turned out to be a Doctor Lieberman, who submitted his report on September 20. A minute order for September 21 reads in part as follows: "Petition is granted. Counsel for petitioner shall prepare Findings and Judgment." Certain findings, which are now attacked, were signed on September 22 and filed the same day. Though they were served on counsel, the judgment was also filed on September 22 and entered about two weeks later.

Conceding for the sake of argument that in connection with the preparation of the findings the court complied neither with section 632 of the Code of Civil Procedure, nor with California Rules of Court, rule 232, and conceding further that the findings which were signed and filed did

---

[2]This contention rests on the substantive assertion that in order to free a child from parental control under section 232 et seq. the court must be guided by the criteria of section 4600. Since we conclude that no written findings were necessary we do not reach the point.

not expressly cover all matters which appellants claim as essential to support the judgment, these matters are of no moment if no findings were required at all.

The provisions of the Code of Civil Procedure with respect to findings are found in part 2 of that code relating to civil actions. Section 21 of the same code divides all judicial remedies into "actions" and "special proceedings." Actions are defined as follows: "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Code Civ. Proc., § 22.) Special proceedings consist of "every other remedy." (Code Civ. Proc., § 23.) This distinction between actions and special proceedings has been fleshed out by the Supreme Court. "The distinction . . . is well recognized. 'The term "special proceeding" is used in the codes of practice of many of the states in contradistinction to "action." ■ It may be said, generally, that any proceeding in a court which was not under the common law and equity practice either an action at law or a suit in chancery is a special proceeding.' " (*In re Central Irrigation District,* 117 Cal. 382, 387 [49 P. 354]; see also *Tide Water Assoc. Oil Co.* v. *Superior Court,* 43 Cal.2d 815, 822 [279 P.2d 35]; *Church* v. *County of Humboldt,* 248 Cal.App.2d 855, 858, fn. 3 [57 Cal.Rptr. 79].) ■ Having that distinction in mind, it has been held that proceedings under the provisions of former section 701 et seq. of the Welfare and Institutions Code which were generally supplanted by the provisions of the Civil Code under which the present proceeding is brought, were not actions but special proceedings which did not require findings. (*In re Peterson,* 56 Cal.App.2d 791, 795 [133 P.2d 831]; see also *Adoption of Thevenin,* 189 Cal.App.2d 245, 251 [11 Cal.Rptr. 219]; see generally 4 Witkin, Cal. Procedure (2d ed. 1971) pp. 3114-3115.)

No written findings being necessary at all, we need not discuss the claimed defects in the ones that were filed. (*Adoption of Thevenin, supra,* 189 Cal.App.2d 245, 251.)

IV.

■ Citees argue that "in view of the express findings and recommendations of the probation officer and the court appointed psychiatrist, the court was not warranted in making the order." This argument simply attacks the sufficiency of the evidence.

A probation officer's report had been ordered pursuant to section 233. The deputy who conducted the investigation came to the conclusion that

the petition should be dismissed. It is apparent that she was greatly influenced by a letter from John F. Scott, another deputy probation officer, who had supervised the father's probation after a criminal conviction and was citees' only witness—apart from citees themselves.

Doctor Lieberman's recommendation after examining both parents and Anton was as follows:

"My impression is that this is a tragic situation of two parents, who because of their own past lives, have been so sadly mismanaged that they are unable to see or recognize the needs of their own children. [*Sic.*] The children have been used by the parents as outlets for their own pathology, and it is clear that foster home placement is best for them at the present time. It is impossible, however, not to sympathize with Mr. and Mrs. J . . ., who have such severe problems and are fighting off such devastating depression and who have such fear of psychotherapy for themselves as to prevent them from attaining it. I would strongly recommend that each one have individual psychotherapy for their own sakes. At the present time I do not feel that they could be the kind of parents that they would actually instinctively want their own children to have."

Even if this evidence supports citees, there was much contrary evidence that more than amply justifies the court's judgment which cannot have been an easy one. No useful purpose would be served in setting forth the ways in which citees have—in the words of Doctor Lieberman—so "mismanaged" their lives that they are "unable to see or recognize the needs of their own children." Doctor Lieberman apparently felt that further temporizing would be the best solution. While the court could have followed this suggestion, we obviously cannot criticize it for refusing to do so. Section 232.5 of the code expressly commands it to so construe the statute as to "serve and protect the interests and welfare of the child." The court apparently felt that it was time to get the children out of foster homes and to make them available for adoption. This seems to be precisely what the statute demands.

## V.

Finally citees point out that the record does not indicate that the court complied with section 239 which reads as follows: "If the court by order or judgment declares a minor person free from the custody and control of both parents under the provisions of this chapter, the court shall at the same time appoint a guardian of such minor person."

We confess to being puzzled by this apparently mandatory requirement. It may be, as the county argues, that it was substantially complied with

by a provision in the judgment to the effect that the minors were placed in the care, custody and control of the County of Los Angeles "for purposes of adoptive planning and placement." (Cf. *Guardianship of Henwood,* 49 Cal.2d 639, 645-646 [320 P.2d 1].) Whether or not that is what the Legislature had in mind when it added section 239 to the Civil Code in 1967, we do not know. It certainly seems a superfluous requirement in many, if not most, situations and we can think of no useful purpose which a formal guardianship might serve in the case at bar.

Be that as it may, we are certain that, the children having properly been freed from parental control, citees have no standing to attack any procedural defect in not complying with section 239 thereafter.

The judgment is affirmed.

Stephens, J., and Ashby, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 23, 1973.