Opinion
 

 HUFFMAN, J.
 

 In this action we are asked to determine the nature of the hearing provided for under Welfare and Institutions Code
 
 [1]
 
 6602 of the recently enacted Sexually Violent Predators Act (the Act) (§ 6600 et seq.) to determine if there is “probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release.” (§ 6602.) Here, the trial court, over the objection
 
 *1456
 
 of Leon Parker’s counsel, determined there was probable cause to hold Parker for trial as a potential “sexually violent predator” (SVP) under the Act after a facial review of the petition and its attachments, following an earlier superior court judge’s ruling that a full evidentiary hearing was not required under section 6602. Because we conclude that a probable cause hearing under this section requires more than a mere “paper review” in this case, we grant the petition and remand to the trial court to conduct an appropriate hearing in accordance with this opinion.
 

 Background
 

 I
 

 Summary of the Act
 

 The Act, contained in sections 6600 through 6608, was enacted October 11, 1995, effective January 1, 1996. (Stats. 1995, chs. 762, §3, 763, §3.) The Act’s uncodified purpose clause states: “The Legislature finds and declares that a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders can be identified while they are incarcerated. These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence. The Legislature further finds and declares that it is in the interest of society to identify these individuals prior to the expiration of their terms of imprisonment. It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society. [¶] The Legislature further finds and declares that while these individuals have been duly punished for their criminal acts, they are, if adjudicated sexually violent predators, a continuing threat to society. The continuing danger posed by these individuals and the continuing basis for their judicial commitment is a currently diagnosed mental disorder which predisposes them to engage in sexually violent criminal behavior. It is the intent of the Legislature that these individuals be committed and treated for their disorders only as long as the disorders persist and not for any punitive purposes.” (Stats. 1995, ch. 763, § 1.)
 

 The Act defines an SVP as “a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.”
 
 *1457
 
 (§6600, subd. (a).) The Act provides that: “[t]he existence of any prior convictions may be shown with documentary evidence. The details underlying the commission of an offense that led to a prior conviction, including a predatory relationship with the victim, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of Mental Health.” (§ 6600, subd. (a), as amended by Stats. 1996, ch. 462, § 4, eff. Sept. 13, 1996.) Subdivision (b) of section 6600 lists the qualifying sexually violent offenses for purposes of the Act.
 
 [2]
 
 Although a “[d]iagnosed mental disorder” is not fully defined under the Act, such condition is stated to “include[] a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others.” (§ 6600, subd. (c).) Proof of a recent overt act while the prospective SVP is in custody is not required to show “[d]anger to the health and safety of others.” (§ 6600, subd. (d).)
 

 Under section 6601, if the Director of the Department of Corrections determines that a prisoner may be an SVP, the director must refer the prisoner for an initial screening, which includes evaluation by two practicing psychiatrists or psychologists in accordance with a standardized assessment protocol, commenced at least six months before the prisoner’s scheduled release date. (§ 6601, subds. (a), (b), (c) & (d).)
 
 [3]
 
 If both evaluators conclude that the prisoner “has a diagnosed mental disorder such that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody,” the Director of the Department of Mental Health (DMH) transmits a request for a petition for commitment under the Act, with copies of the evaluation reports and other supporting documents, to the county in which the prisoner was last convicted. (§ 6601, subds. (d), (h) & (i).) If the
 
 *1458
 
 designated county’s attorney concurs in the request, a petition for commitment is filed in that county’s superior court. (§ 6601, subd. (i).)
 

 Once filed, the superior court is required to hold a probable cause hearing at which the individual named in the petition is entitled to assistance of counsel. (§ 6602.) If the court determines there is probable cause to believe that the person is likely to engage in sexually violent predatory
 
 [4]
 
 criminal behavior upon his or her release from prison, the judge “shall” order that a trial be conducted “to determine whether the person is, by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the person is likely to engage in acts of sexual violence upon his or her release . . . .” (§ 6602.) If, however, the court finds no probable cause, the court must dismiss the petition and have the prisoner report to parole. (§6602.)
 

 Subdivision (a) of section 6601.5 of the Act provides that: “In cases where an inmate’s parole or temporary hold pursuant to Section 6601.3[
 
 5
 
 ] will expire before a probable cause hearing is conducted pursuant to Section 6602, the agency bringing the petition may request an urgency review pursuant to this section. Upon that request, a judge of the superior court shall review the petition and determine whether the petition states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release. If the judge determines that the petition, on its face, supports a finding of probable cause, the judge shall order that the person be detained in a secure facility until a hearing can be held pursuant to Section 6602. The probable cause hearing provided for in Section 6602 shall be held within 10 calendar days of the date of the order issued by the judge pursuant to this section.”
 
 [6]
 

 The person subject to a trial under the Act is then to remain in custody in a secure facility until the trial is completed. (§ 6602.) That person is entitled to trial by jury, the assistance of counsel, the right to retain experts or professional persons to perform further evaluations, and access to relevant
 
 *1459
 
 medical and psychological reports. (§ 6603, subd. (a).) The court, if jury is waived, or the jury, by unanimous verdict, must determine beyond a reasonable doubt whether the person named in the petition is in fact an SVP. (§ 6604.) If there is any reasonable doubt, the person is released at the expiration of his or her prison term. (§ 6604.) If the person is determined to be an SVP, he or she shall be committed to the custody of the DMH for two years “for appropriate treatment and confinement in a secure facility . . . ,” subject to annual review and extension of commitment if the diagnosed mental disorder and the consequent danger to the community persists. (§§ 6604, 6605.)
 

 The remaining sections of the Act contain provisions relating to the annual review, treatment, extension of commitment, and conditional and unconditional releases. (§§ 6605-6608.)
 

 II
 

 Procedural Summary and Facts
 

 On October 16,1992, Parker was convicted of committing a lewd act with a child under the age of 14 (Pen. Code, § 288, subd. (a)) and was found to have suffered an earlier serious felony conviction for committing a lewd act with a child under the age of 14 in 1984 (Pen. Code, § 667, subd. (a)(1)). Parker was sentenced to a determinate term of eight years with a parole release date set for October 9, 1997.
 

 On August 5, 1997, the DMH wrote the San Diego District Attorney’s Office that Parker had been identified as an SVP under the Act and attached to its letter the reports of two psychiatric professionals who concurred, after separate evaluations, that Parker fit the Act’s statutory qualifications. Specifically, the experts’ reports concluded Parker presently suffers from a “diagnosed mental disorder” and is currently dangerous thereby qualifying as an SVP for commitment under the Act.
 

 Pursuant to the Act, the People filed a petition September 2, 1997, which included the above referenced psychiatric reports, requesting the superior court to commence proceedings to determine whether Parker should be committed as an SVP and to issue an order under section 6601.5 to hold Parker in the San Diego County jail pending a probable cause hearing.
 

 Before that hearing occurred, San Diego Superior Court Judge Michael D. Wellington conducted a hearing on September 4, 1997, to determine the parameters of a section 6602 probable cause hearing for purposes of setting
 
 *1460
 
 court guidelines in such future hearings.
 
 [7]
 
 After briefing and oral argument, Judge Wellington ruled that “[t]he probable cause hearing is to be a paper review by the Court of the petitions and the [section 6601, subdivision (d)] reports. The review will not be a live hearing.”
 

 On October 20, 1997, San Diego Superior Court Judge Bernard E. Revak conducted the section 6602 probable cause hearing in Parker’s case in accordance with Judge Wellington’s order. After a facial review of the petition and the experts’ evaluation reports which were objected to as hearsay by Parker’s counsel, Judge Revak found probable cause to believe that Parker was likely to engage in sexually violent predatory criminal behavior upon his release from custody and set the matter for trial.
 

 Parker subsequently filed this petition for a writ of habeas corpus/prohibition and requested a stay of the jury trial set for December 9, 1997, claiming he was denied a valid probable cause hearing and there was no legal basis for a finding of probable cause at the purported section 6602 hearing because the trial court relied upon inadmissible hearsay. We issued an order to show cause why the habeas corpus relief requested should not be granted,
 
 [8]
 
 set up a briefing schedule, calendared oral argument in the matter and stayed the December 9 trial until further order of this court.
 

 Discussion
 

 In his petition for a writ of habeas corpus, Parker essentially claims he is illegally detained because the procedures followed by the court allowed it to make a probable cause determination on the basis of objected-to, inadmissible hearsay evidence consisting of the written reports of two psychiatric experts attached to the SVP petition. Parker contends the “parameters” set out for the section 6602 probable cause hearing by Judge Wellington that were followed by Judge Revak were contrary to the language of the statute and the legislative intent in enacting that section. Relying on changes in the various versions of the Senate bills preceding
 
 *1461
 
 enactment of the Act and on the language of section 6602, Parker contends that section is ambiguous on the scope of the proceeding in which a probable cause determination is made. He argues the use of the word “hearing” and the provision for the “assistance of counsel” at the hearing mandated in section 6602, and the requirement of a facial review of the petition to determine probable cause under section 6601.5 before a prisoner nearing completion of his or her term is held for an “urgently” set hearing under section 6602, demonstrate the Legislature clearly intended the section 6602 probable cause hearing to be a full adversarial evidentiary hearing comporting with the rules of evidence, somewhat analogous to a criminal preliminary hearing in California. Parker therefore asserts the court erroneously found probable cause to hold him for trial and that he must consequently be ordered released with directions to report to parole as required under the Act.
 

 The People, on the other hand, contend the trial court correctly construed the “hearing” provided for under section 6602 as one limited in scope to a paper review of the petition and the experts’ reports, albeit hearsay, based on the plain language of the section. The People argue such interpretation is supported by section 6603 of the Act, which provides a potential SVP with the right to retain experts on his or her behalf only for the trial and not the probable cause hearing, thus evidencing the Legislature’s chosen forum of the trial for the contested evidentiary hearing on the dangerousness element for an SVP.
 

 Because we, like other appellate courts that have reviewed the constitutionality of the Act, have determined the Act does not establish criminal proceedings but rather enacts civil involuntary confinement proceedings,
 
 [9]
 
 the real question before us boils down to whether the “parameters,” or scope, of the section 6602 probable cause hearing, set out in guidelines by Judge
 
 *1462
 
 Wellington and followed by Judge Revak, in Parker’s case were sufficient to afford Parker due process of the law.
 
 [10]
 

 For guidance in answering this question, we look first to the concept of “due process” and then to the rules of statutory interpretation and to any analogous “interim” proceedings.
 

 Generally, “[d]ue process requires only that the procedure adopted comport with fundamental principles of fairness and decency. The due process clause of the Fourteenth Amendment does not guarantee to the citizen of a state any particular form or method of procedure.”
 
 (People
 
 v.
 
 Rojas
 
 (1981) 118 Cal.App.3d 278, 287 [173 Cal.Rptr. 64].)
 

 As this court noted in
 
 Conservatorship of Moore
 
 (1986) 185 Cal.App.3d 718 [229 Cal.Rptr. 875]: “Procedural due process is a watchword, not the unwavering equivalent of a formal hearing. The question of whether due process has obtained can only be answered by scrutinizing the circumstances in which the deprivatory action arose. [Citations.] ‘Because of the broad spectrum of concerns to which the term must apply, flexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error. [Citation.]’ [Citation.] Under the Fourteenth Amendment of the federal Constitution, the Supreme Court tests the fundamental fairness of government decisionmaking against a balance of three distinct factors: ‘First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]’ [Citation.]”
 
 (Conservatorship of Moore, supra,
 
 185 Cal.App.3d at pp. 728-729.)
 

 Our Supreme Court has determined that the California Constitution requires the consideration of these same three factors in addition to considering “the dignitary interest in informing individuals of the nature, grounds
 
 *1463
 
 and consequences of the action and in enabling them to present their side of the story before a responsible government official” before deciding what due process is due.
 
 (People
 
 v.
 
 Ramirez
 
 (1979) 25 Cal.3d 260, 269 [158 Cal.Rptr. 316, 599 P.2d 622];
 
 Conservatorship of Moore, supra,
 
 185 Cal.App.3d at p. 729.)
 

 Considering these factors, we note that Parker has a substantial private interest of liberty at stake since he has served his underlying prison term and was scheduled to be released on parole shortly after the instant civil proceedings under the Act by the government began. (See
 
 People
 
 v.
 
 Feagley
 
 (1975) 14 Cal.3d 338 [121 Cal.Rptr. 509, 535 P.2d 373];
 
 People
 
 v.
 
 Burnick
 
 (1975) 14 Cal.3d 306 [121 Cal.Rptr. 488, 535 P.2d 352].) We also recognize that the Act provides numerous checks against the risk of erroneous deprivation of the prospective SVP’s liberty interest. In some situations, which do not apply to Parker, the prospective SVP will have all evaluations completed, petition filed, probable cause determination made and trial finished before he or she is scheduled to be released on parole. In that case, any erroneous probable cause ruling would be de minimis to the person’s liberty interest. On the contrary, if the court in the situation in which Parker finds himself erroneously determines probable cause to require that he go to trial on the issue of whether he qualifies under the Act as an SVP, the loss to Parker of his liberty for such period would be great. In his case, the inclusion of additional procedural safeguards for the probable cause hearing could certainly assist in enabling him to present his side of the story before the probable cause determination. Such provisions could also save the government the expense of trial with little added monetary expense at the probable cause hearing for producing the expert witnesses who conducted the evaluations to testify and be cross-examined.
 

 However, a conclusion on what process would truly comport with fundamental principles of fairness and decency in Parker’s situation can only be answered after we decipher what type of hearing the Legislature envisioned when it enacted section 6602.
 

 Section 6602 of the Act states that: “A judge of the superior court shall review the petition and shall determine whether there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release. The person named in the petition shall be entitled to assistance of counsel at the probable cause hearing. If the judge determines there is not probable cause, he or she shall dismiss the petition and any person subject to parole shall report to parole. If the judge determines that there is probable cause, the judge shall order that the person remain in custody in a secure facility until
 
 *1464
 
 a trial is completed and shall order that a trial be conducted to determine whether the person is, by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the person is likely to engage in acts of sexual violence upon his or her release from the jurisdiction of the Department of Corrections or other secure facility.”
 

 Our mission is to interpret this section “ ‘so that the purpose of the legislation may be effectuated[.] . . .’ [Citation.]”
 
 (People
 
 v.
 
 Mixon
 
 (1990) 225 Cal.App.3d 1471,1481 [275 Cal.Rptr. 817].) Thus, it has been held that: “[t]he interpretation of a statute as a whole must be reasonable and when opportunity arises, made compatible with common sense and the dictates of justice. It is the duty of courts not to be ingenious to find ambiguity in the statutes because of extraneous matters, but to interpret them in such a manner that they may be free of ambiguity, and to give, if possible, a construction which not only renders them constitutional, but which is consistent with sound common sense and wise policy, with a view to promoting justice.”
 
 (Adoption of Thevenin
 
 (1961) 189 Cal.App.2d 245, 249-250 [11 CaL.Rptr. 219].)
 

 Generally, in order to determine this legislative intent, “. . . we begin by examining the language of the statute. [Citations.]”
 
 (People
 
 v.
 
 Pieters
 
 (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].) In doing so, we must give effect to the usual, ordinary import of the words used in the statute, giving significance to each word, phrase and sentence in context with the purpose of the statute and avoiding a construction which would make some words surplusage.
 
 (Moyer
 
 v.
 
 Workmen’s Comp. Appeals Bd.
 
 (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) Nevertheless, we are mindful that: “ ‘language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.’ [Citations.] Thus, ‘[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.’ [Citation.] Finally, we do not construe statutes in isolation, but rather read every statute ‘with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.’ [Citation.]”
 
 (People
 
 v.
 
 Pieters, supra,
 
 52 Cal.3d at pp. 898-899.)
 

 Applying these principles here, we note the plain language of section 6602 refers not only to a review of the petition, which concededly would entail only a facial review of that document (see
 
 County of Riverside
 
 v.
 
 McLaughlin
 
 (1991) 500 U.S. 44 [111 S.Ct. 1661, 114 L.Ed.2d 49]), but also to the right of the person named in the petition to have an attorney and to a “hearing” for the probable cause determination, both of which arguably imply that something more than a facial review of the petition is required
 
 *1465
 
 (see
 
 German
 
 v.
 
 Pugh
 
 (1975) 420 U.S. 103, 122 [95 S.Ct. 854, 867-868, 43 L.Ed.2d 54];
 
 People
 
 v.
 
 Pennington
 
 (1967) 66 Cal.2d 508, 520-521 [58 Cal.Rptr. 374, 426 P.2d 942]). Because of this inherent ambiguity in section 6602 regarding the scope of a probable cause hearing, it is necessary to look at the legislative history as well as the entire statutory system of which section 6602 is a part to help determine the intended nature of such hearing.
 
 [11]
 

 Although the legislative history reveals the first line of section 6602, which provides for a review of the petition, remained the same through all versions of the bill (see Assem. Bill No. 888 (1995-1996 Reg. Sess.) § 3, introduced Feb. 22, 1995; Sen. Bill No. 1143 (1995-1996 Reg. Sess.) §3, introduced Feb. 24,1995), the Legislature later added the second sentence of section 6602 which provides the person named in the petition the right to the “assistance of counsel at the probable cause hearing.”
 
 [12]
 
 (Assem. Amend, to Assem. Bill No. 888,
 
 supra,
 
 § 3, Apr. 25, 1995; Assem. Amend, to Sen. Bill No. 1143,
 
 supra,
 
 § 3, July 13, 1995.)
 
 [13]
 

 While an earlier bill analysis had provided that “[u]pon a finding of probable cause, a commitment hearing would be scheduled[,]” (Sen. Com. on Crim. Procedure, Analysis of Assem. Bill No. 888 (1995-1996 Reg. Sess.) as amended May 31,1995 for July 11,1995, hearing), the bill analysis for the final Assembly vote is silent on what procedures apply for a probable cause determination after the amendment to provide for counsel and a hearing, merely stating that section 6602: “Provided that a superior court judge shall review the petition and shall determine whether there is probable cause to believe the individual is likely to engage in sexual violent predatory criminal behavior upon his or her release. If probable cause exists, then the judge shall order that a trial be conducted.” (Legis. Counsel’s Dig., Sen. Cone. Amends, to Assem. Bill No. 888 (1995-1996 Reg. Sess.).)
 

 This legislative history of the Act lends little assistance in resolving the ambiguity created by the amended language to section 6602 as to whether
 
 *1466
 
 the probable cause hearing is to be more than a paper review. However, when we consider other provisions of the Act and its general purpose, we obtain a clearer view of the legislative intent.
 

 As pointed out by Parker, section 6601.5 provides for an urgently set section 6602 probable cause hearing if the court after a review of the face of the petition finds it states or contains sufficient facts “that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release.” (§ 6601.5, subd. (a).) Such clearly reveals that the Legislature knows how to limit consideration of the petition to only a paper review. Such also provides support for Parker’s position that it can be inferred from the fact the Legislature did not use such language in section 6602 that it did not intend to limit the probable cause determination to merely a facial review.
 

 In addition, we agree with Parker that it would be superfluous to require the court to do another facial paper review of the petition and its attachments to determine probable cause after already having done so under section 6601.5. While we also agree with the People that section 6603, which provides for the retaining of experts for further evaluations and access or discovery of relevant medical and psychological reports, evidences an intent to make the “trial” the main contested venue for finally determining whether a proposed SVP is truly qualified for further involuntary civil commitment, we do not find such provision limits the nature or scope of the section 6602 probable cause hearing.
 

 While admittedly section 6602 is not a model of clarity, nonetheless, we believe the Legislature intended to provide a purported SVP an opportunity to be fully heard on the issue of probable cause at that hearing. Such conclusion is further supported by a consideration of the Act’s general purpose.
 

 The stated objective sought to be achieved by the Act is to identify individuals who have certain diagnosed mental disorders which make them likely to engage in acts of sexual violence and to confine them for treatment of “their disorders only as long as the disorders persist and not for any punitive purposes.” (Stats. 1995, ch. 763, § 1.) Similar to the purpose of other civil involuntary commitment proceedings, the Act intends to confine the SVP for treatment for a period only so long as the SVP’s mental disorder continues. From such purpose common sense dictates it can be inferred that the Legislature also intended such commitment for treatment to only be commenced if there was sufficient probable cause to show the SVP had a qualifying mental disorder.
 

 
 *1467
 
 As noted earlier, the Act defines an SVP as “a person who has been convicted of a sexually violent offense against two or more victims for which he or she has received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.” (§ 6600, subd. (a).) Because the Act does not require proof that the prospective SVP committed a recent overt act while in custody to be able to show “[d]anger to the health and safety of others” to qualify under the Act (§ 6600, subd. (d)), a “diagnosed mental disorder” from which a prediction of future dangerous behavior can be made must necessarily include some evidence of that past violent criminal conduct.
 

 As the People point out, subdivision (a) of section 6600 specifically provides that the existence of such qualifying past conduct may be shown with documentary evidence. (§ 6600, subd. (a).) Contrary to the People’s assertion such provision evidences the Legislature’s intent to restrict a probable cause determination to solely a facial review of the petition and its attachments, i.e., the use of the hearsay evaluations by the experts, we find it reveals just the opposite. Once again the Legislature has shown it knows how to specifically limit a review under the Act by providing that certain evidence will be sufficient to support a showing of or prove a required element for determining whether a person is an SVP. Because the Legislature did not similarly provide that probable cause “to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release” (§ 6601.5, subd. (a)) could be shown by documentary evidence, we can infer it did not intend to limit such determination to merely the paper review the court here conducted.
 
 [14]
 

 Consideration of other civil interim involuntary commitment proceedings (i.e., commitments under the Lanterman-Petris-Short Act (§ 5000 et seq.; see also § 5256.2 et seq.; §§ 5300.5-5303.1)) and various analogous criminal proceedings for a probable cause determination before a person is set to stand trial or is referred or certified for civil commitments pending or in lieu of a criminal prosecution or punishment (see, e.g., §§ 6250, 6300 [repealed by Stats. 1981, ch. 928, §2, p. 3485], 6500 et seq.; Pen. Code, §§ 1367-1372, 1600 et seq., 2684 et seq.) also supports our conclusion the Legislature intended more due process to apply to a probable cause hearing than that
 
 *1468
 
 which was allowed in this case. Although most of the involuntary civil commitment proceedings to determine whether there is probable cause that a person has a mental disorder, impairment by chronic alcoholism (§ 5250 et seq.), or is probably “gravely disabled” (§ 5270.15 et seq.) requiring extensive treatment or an involuntary conservatorship only provide for an administrative hearing for such determination, such hearing generally provides the person more due process than that accorded Parker in this case. While the administrative officer at such hearings is not bound by the rules of procedure or evidence, the person involved is entitled to the representation of counsel and has the right to both present evidence on the issue of his or her disorder or impairment and the right to cross-examine the witnesses who conducted the evaluations proposing extensive involuntary commitment for treatment of such disorder or impairment. (See §§ 5256.2-5256.4.)
 

 Likewise, in a criminal case where there is a formal preliminary hearing procedure used to determine whether there is probable cause to justify the case going to trial, something more than a mere probable cause determination made on the face of a criminal complaint to detain an arrestee for a significant time pending trial is required. (See
 
 Whitman
 
 v.
 
 Superior Court
 
 (1991) 54 Cal.3d 1063, 1079-1080 [2 Cal.Rptr.2d 160, 820 P.2d 262], citing
 
 Gerstein
 
 v.
 
 Pugh, supra,
 
 420 U.S. at pp. 119-126 [95 S.Ct. at pp. 866-869].) However, as the Supreme Court in
 
 Whitman
 
 noted “ ‘the federal Constitution does not require the entire panoply of procedural rights available at trial to be observed in the pretrial hearing [citation].1 ”
 
 (Whitman
 
 v.
 
 Superior Court, supra,
 
 54 Cal.3d at p. 1081.) Thus, the limited admission of hearsay evidence for such probable cause determination does not render such proceeding or determination unconstitutional.
 
 (Id.
 
 at pp. 1082-1083.)
 

 Certainly, the Legislature was aware of these existing civil involuntary commitment and criminal preliminary hearing procedures when it enacted section 6602 as part of the Act. We can thus safely conclude the Legislature intended to provide a person named in a petition filed under the Act, who was subject to losing his or her “liberty,” of being released on parole after a prison commitment, a hearing at which the person could be heard, not merely by counsel pointing out legal deficiencies on the face of the petition, but also by being able to effectively challenge the facts on which the petition was filed, i.e., the underlying attached experts’ evaluations.
 
 [15]
 
 Not to do so would allow the government “ ‘to dispose of [Parker’s] significant interests
 
 *1469
 
 without offering him a chance to be heard [thus risking to treat] him as a nonperson, an object, rather than a . . . participating citizen.’ [Citation.]”
 
 (People
 
 v.
 
 Ramirez, supra,
 
 25 Cal.3d at pp. 267-268.)
 

 Returning to the determination of what process is necessary to provide Parker a fair probable cause hearing, we make several observations. Although we have concluded the Legislature clearly intended section 6602 to provide more than a paper review for such determination, the Act does not specifically provide any procedural requirements, other than the right to be represented by counsel and to have a hearing, to determine such probable cause. We believe the Legislature contemplated that a hearing under section 6602, if contested, would permit the person named in the petition to challenge the facts alleged in that document purportedly showing he or she is likely to engage in sexually violent predatory criminal behavior upon release from custody. While we leave to either the Supreme Court or the Legislature to fill the procedural gap in section 6602 by describing the specific procedures to ensure fairness for all SVP cases, until such time the circumstances of each such hearing will dictate what due process is required.
 
 [16]
 

 Because we have found the Legislature intended a potential SVP to be able to challenge the basis of a petition to commence proceedings for his or her commitment under the Act at the section 6602 hearing in a matter similar to that provided other persons challenging a probable cause determination for an involuntary civil commitment or at a criminal preliminary hearing before the matter is set for trial, common sense and fairness dictate that such hearing should allow the admission of both oral and written evidence. While we believe the prosecutor may present the opinions of the experts through
 
 *1470
 
 the hearsay reports of such persons, the prospective SVP should have the ability to challenge the accuracy of such reports by calling such experts for cross-examination. Further, the prospective SVP should have the ability to call such other witness who, upon a proper showing, the superior court judge finds to have relevant evidence to give bearing on the issue of probable cause.
 

 The paper review procedure, declared by Judge Wellington for use by all judges of the superior court for section 6602 probable cause hearings and which was used by Judge Revak in this case, did not permit Parker to call as witnesses the experts who completed his evaluations concluding he qualified as an SVP, although he objected to them not being present and to their reports being attached to the petition. We therefore cannot find that Parker was afforded due process and conclude he was denied a fair probable cause hearing. We thus remand the matter to Judge Revak to vacate the order of probable cause and to conduct a new probable cause hearing in accordance with this opinion.
 

 Disposition
 

 The order to show cause issued in this matter is discharged and the petition for writ of habeas corpus relief is granted to the extent Parker is entitled to a new probable cause hearing which should be conducted consistent with the views expressed in this opinion. The stay order previously entered is vacated.
 

 Kremer, P. J., and Nares, J., concurrred.
 

 Petitioner’s application for review by the Supreme Court was denied April 29, 1998.
 

 [1]
 

 All statutory references are to the Welfare and Institutions Code unless otherwise specified.
 

 [2]
 

 These qualifying offenses, which must be “committed by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person . . . ,” include Penal Code sections 261, subdivision (a)(2), 262, subdivision (a)(1), 264.1, 288, subdivision (a) or (b), 289, subdivision (a), and sodomy or oral copulation in violation of Penal Code section 286 or 288a. (§ 6600, subd. (b).) For purposes of the Act, sexually violent offenses may also include a finding of not guilty by reason of insanity for an offense described in the Act, a conviction leading to a finding that the person was a mentally disordered sex offender, a conviction in another state of an offense that includes all the elements of an offense described in the Act, and a conviction before July 1, 1977, of an offense enumerated in the Act, even if the offender did not receive a determinate sentence for that crime. (§ 6600, subd. (a), as amended by Stats. 1996, ch. 462, § 4, eff. Sept. 13, 1996.)
 

 [3]
 

 The six-month time period does not apply during the first year the Act is operative (§ 6601, subd. (j)) and may be shortened under certain circumstances (§ 6601, subd. (a)). “The standardized assessment protocol shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders . . . [including] criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder." (§ 6601, subd. (c).)
 

 [4]
 

 The Act defines “[p]redatory” as “an act directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization.” (§ 6600, subd. (e).)
 

 [5]
 

 Section 6601.3, subdivision (a) states that “The Board of Prison Terms may order that a person referred to the [DMH] pursuant to subdivision (b) of Section 6601 remain in custody for no more than 45 days for full evaluation pursuant to subdivisions (c) to (h), inclusive, of Section 6601, unless his or her scheduled date of release falls more than 45 days after referral.”
 

 [6]
 

 Section 6601.5 was in effect only until January 1, 1998, at which time it was repealed. (§ 6601.5, subd. (b).)
 

 [7]
 

 The hearing involved two potential SVP’s not before the court in this matter.
 

 [8]
 

 It has long been established that while a remedy by writ of habeas corpus is both speedy and adequate, its existence is a bar to prohibition. (See
 
 Leach
 
 v.
 
 Superior Court
 
 (1932) 215 Cal. 531, 534 [12 P.2d 1].) Because Parker is in custody, a writ of habeas corpus, not prohibition, is the appropriate vehicle to pursue the relief Parker seeks. (See
 
 In re Cregler
 
 (1961) 56 Cal.2d 308, 309 [14 Cal.Rptr. 289, 363 P.2d 305].)
 

 Moreover, a claim of legal error, as here, rather than a claim attacking the lack of or an act in excess of jurisdiction, generally may not be reviewed on writ of prohibition.
 
 (County of Santa Clara
 
 v.
 
 Superior Court
 
 (1971) 4 Cal.3d 545, 551, fn. 3 [94 Cal.Rptr. 158, 483 P.2d 774].)
 

 [9]
 

 In addition to our decision in
 
 People
 
 v.
 
 Hedge
 
 (1997) 56 Cal.App.4th 773 [65 Cal.Rptr.2d 693] (review granted Oct. 29, 1997 (S063954)), which held, based on the holdings of
 
 Kansas
 
 v.
 
 Hendricks
 
 (1997) 521 U.S. _ [117 S.Ct. 2072, 138 L.Ed.2d 501])
 
 (Hendricks)
 
 that constitutional due process, ex post facto, equal protection and double jeopardy challenges to the Act at the demurrer stage were without merit, earlier decisions in this state addressing various constitutional questions concerning the Act before
 
 Hendricks
 
 was decided are pending review before our Supreme Court:
 
 Hubbart
 
 v.
 
 Superior Court
 
 (1996) 50 Cal.App.4th 1155 [58 Cal.Rptr.2d 268] review granted February 26, 1997 (S052136);
 
 Garcetti
 
 v.
 
 Superior Court
 
 (1996) 49 Cal.App.4th 1533 [57 Cal.Rptr.2d 420] review granted February 5, 1997 (S057336); and
 
 People
 
 v.
 
 Superior Court (Cain)
 
 (1996) 49 Cal.App.4th 1164 [57 Cal.Rptr.2d 296] review granted February 5, 1997 (S057272); each has been reprinted without change in the Review Granted Opinions Pamphlet (Jan. 1998) to permit tracking pending review and disposition by the Supreme Court.
 

 Another appellate court decision,
 
 People
 
 v.
 
 Putney
 
 (1997) 57 Cal.App.4th 739 [67 Cal.Rptr.2d 283], which upheld the Act against a constitutional challenge that it violated ex post facto laws in light of
 
 Hendricks,
 
 was granted review December 23, 1997 (S065144).
 

 [10]
 

 While Parker agrees with the People that the “civil” commitment proceedings provided for by the Act are different than criminal proceedings, and basically concedes the same constitutional rights as afforded criminal defendants need not apply in such circumstances, he relies on rights afforded charged suspects and criminals for the due process and evidentiary formality he seeks in this matter. At oral argument, the People conceded the Act’s subsequent legislative history reveals the Legislature intended to provide a type of “preliminary hearing” for the probable cause determination, but argued the hearing conducted in this case satisfied due process.
 

 [11]
 

 As requested by the parties, we have taken judicial notice of the legislative history of the Act which was submitted in an earlier petition for writ review in
 
 People
 
 v.
 
 Superior Court CDuff)
 
 (D025925, writ den. May, 1996). (Evid. Code, §§ 451, subd. (a), 452.)
 

 [12]
 

 The amendment also included a provision for a person taken back into custody under section 6601 to have a probable cause determination take place within 72 hours of the time that the person is taken back into custody. (Assem. Amend, to Assem. Bill No. 888,
 
 supra,
 
 § 3, Apr. 25, 1995; Assem. Amend, to Sen. Bill No. 1143,
 
 supra,
 
 § 3, July 13, 1995.) This provision was later taken out of the final version of the bill. (Assem. Amend, to Assem. Bill No. 888,
 
 supra,
 
 § 3, May 31, 1995; Assem. Amend, to Sen. Bill No, 1143,
 
 supra,
 
 § 3, July 17, 1995.)
 

 [13]
 

 The People note that the Legislature also amended at the same time section 6608 to provide counsel for a committed SVP who is petitioning for conditional release or unconditional discharge. The legislative history does not explain why the amendment was made.
 

 [14]
 

 Subsequent legislative history shows that at the time section 6600, subdivision (a) was added to the Act, proposed changes to limit the probable cause hearing provided for in section 6602 to a facial review of the petition were rejected. (See Assem. Bill No. 3130 (1995-1996 Reg. Sess.) introduced Feb. 23, 1996, and amended Apr. 29, 1996, May 24, 1996, July 7, 1996, and July 15,1996, before adoption (Stats. 1996, ch. 462, § 4, eff. Sept. 13,1996).) This legislative action also provides additional support for our conclusion.
 

 [15]
 

 The parties bicker over whether the reports were properly attached to the petition in this case because there is no provision under the Act for such attachment. However, because the petition can only be filed based upon the recommendation of the expert evaluators via those reports being sent to the county official authorized to file the petition, it naturally follows that such include facts basic to the pleading of the petition. It can thus be inferred the report’s facts were impliedly intended to be pleaded by averments or proper attachment to the petition
 
 *1469
 
 to show probable cause that the person in the petition is an SVP. (§§ 6601, subds. (d), (h) & (i), 6602.) Contrary to Parker’s assertion that civil rules of pleading do not permit such attachment, incorporation of documents to support an averment of ultimate facts required to state a cause of action is proper
 
 (Del Mar Beach Club Owners Assn.
 
 v.
 
 Imperial Contracting Co.
 
 (1981) 123 Cal.App.3d 898, 908 [176 Cal.Rptr. 886, 25 A.L.R.4th 336]) and any purported flaw in their attachment to a civil pleading should be raised by demurrer to the pleadings. Parker did not do so.
 

 [16]
 

 Interestingly, the Board of Prison Terms has adopted specific procedures to ensure fairness in the probable cause hearings for persons who are in custody after parole has been revoked and they have been identified as possible SVP’s for a hold of 45 days for further evaluation. (See Cal. Code Regs., tit. 15, §2600.1 et seq.) Such administrative regulations provide: “The inmate or parolee in revoked status shall have the right to reasonable notice of the [probable cause] hearing, to attend the hearing, to present evidence, to have counsel, to have an interpreter if needed, and to receive a written statement of the decision. If the inmate or parolee in revoked status refuses to participate in the psychiatric screening or review process, the decision to place the hold shall be based on all relevant information available. If the inmate or parolee in revoked status refuses to attend the probable cause hearing conducted by the board, the hearing shall be conducted without the inmate.” (Cal. Code Regs., tit. 15, § 2600.1, subd. (d).)